OPINION
{¶ 1} Appellants, Chris Shrider and Niccole Shrider, filed separate appeals challenging the September 23, 2005 decision of the Wyandot County Court of Common Pleas, Juvenile Division. The trial court granted permanent custody of appellants' minor children, Cassandra ("Cassie") and Shawn Shrider, to the Department of Job and Family Services ("Department") and terminated appellants' parental rights.
 {¶ 2} The Department first became involved with the Shrider children in 2000 after receiving a report that Cassie was playing outside near a set of railroad tracks without supervision. At the time, both children were under three years old. Within the following year, the Department received three additional reports that the Shrider children were wandering outside unsupervised. Then, in September 2002 the Department received a report that the children were wandering about the parking lot of the local VFW hall unsupervised. Following this latest report, a voluntary case plan was filed that included in-home protective supervision for the children.
 {¶ 3} After the Department got involved with the Shriders, caseworkers reported "deplorable" conditions in the home. The home was filthy, there was garbage and food strewn about the hallway, and the toilet was broken and did not function at all. In addition, Chris and Niccole were unable to provide for the basic needs of the children. Moreover, the caseworkers had concerns about the couple's parenting. Niccole had mental health issues, and repeatedly lost her temper with the children and blamed Cassie for a lot of what was going on in the home.
 {¶ 4} Part of the problems stem from Cassie's having behavioral problems. Cassie was later diagnosed with several social disorders, including Attention Deficit Hyperactivity Disorder (ADHD), Neglected Child Disorder, and Reactive Attachment Disorder. She was also determined to have Borderline Intellectual Functioning with an IQ of 73.
 {¶ 5} Throughout this period, the Department provided numerous services for the Shriders. The Department donated trash bags, called the Department of Sanitation to have the toilet fixed, and in 2003 paid for three months rent and utilities after Chris lost his job. Their caseworker also provided additional food, cleaning equipment, and garbage bags. In addition, the Department provided marriage counseling, parenting classes, and counseling for Cassie.
 {¶ 6} In April 2004 there was another report of the children being outside and unsupervised, this time by a creek near the home. Approximately one week later, the children were once again found outside and unsupervised, having walked alone several blocks and across several streets to Carey High School. Following these reports, the children were removed from the home on a voluntary basis and placed with the children's grandmother.
 {¶ 7} However, less than three weeks later, it was determined that their grandmother could not care for the children and the Department filed a complaint seeking temporary custody of the children. The Department was granted emergency temporary custody on June 1, 2004. Thereafter, the children were adjudicated "dependent" and the Department was granted temporary custody. The children were then placed in foster care.
 {¶ 8} The children's foster parents reported several disturbing behaviors on the part of the children. Cassie refused to close bathroom doors while the bathroom was in use, and apparently was afraid of being in closed rooms. Cassie also "abused" her dolls, slapping them open-handed across the face while she referred to herself as "Mommy" and indicated that this is what "Mommy" does when "Shawny" — her name for the doll — is bad. The foster parents also reported that Cassie, then six-years-old, would masturbate frequently. She referred to this behavior as "tickling," which she stated was what her parents called it. She was also discovered in various states of undress with Shawn in sexual positions, indicating that "Mommy and Daddy taught me to do that." Her counselor also testified that Cassie reported that her mother had taught her to touch herself. Reports also indicated that Cassie would have a bowel movement whenever she got in trouble.
 {¶ 9} During the period the children were in foster care Chris and Niccole were required to attend parenting classes and counseling sessions as part of the case plan. However, the record indicates that they frequently missed appointments and generally showed no motivation to fulfill the requirements of the case plan. They also failed to attend several visitations with the children. In her report, the guardian ad litem also indicated that Niccole would frequently get agitated and lose her temper at visitations with the children. After one incident in June 2005 caseworkers had to involve the police after Niccole became aggressive. After this incident, the visitations were stopped completely.
 {¶ 10} With the parents having failed to progress in meeting the goals required for reunification, the department filed a motion for permanent custody on April 29, 2005. Following a hearing held over three days in June and August 2005, the trial court granted the motion and terminated Chris and Niccole's parental rights. In its September 23, 2005 judgment entry the court found pursuant to R.C. 2151.414 that a grant of permanent custody to the Department was in the children's best interests and that the children could not be reunited with their parents within a reasonable time. It is from this judgment that the parents now separately appeal, asserting a total of seven assignments of error.[1]
 Termination of Parental Rights {¶ 11} In his first and second assignments of error, Chris contends:
The trial court committed prejudicial error in terminating theparental rights of [Chris Shrider].
 The trial court's decision to terminate the appellant'sparental rights and grant permanent custody to the Department isagainst the manifest weight of the evidence.
Niccole also challenges the trial court's ruling as being against the manifest weight of the evidence, claiming in her first assignment of error:
The findings of the Wyandot County Juvenile Court thatCassandra and Shawn Shrider are neglected children and should beplace [sic] in permanent custody of Wyandot County Department ofJob and Family Services are against the manifest weight of theevidence and in error because the court placed the burden ofproof upon the parents and not the state.
These assignments of error relate to similar issues, and therefore we will address them together.
 {¶ 12} Our review of a grant of permanent custody begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes
(1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, citing In reMurray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. In re Hayes,supra (citations omitted); In re Murray, supra. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right'[.]"In re Murray, supra. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." Inre Hayes, supra (citations omitted). Thus, it is within these constructs that we now examine the assignment of error.
 {¶ 13} The Revised Code sets out a two-pronged test to be applied when considering a motion for permanent custody. Under this test, the trial court must determine, by clear and convincing evidence, (1) that a grant of permanent custody to the Department is in the best interest of the child and (2) that one of four enumerated factors applies. R.C. 2151.414(B)(1). The Supreme Court of Ohio has held:
[C]lear and convincing evidence is that measure or degree ofproof which will produce in the mind of the trier of facts a firmbelief or conviction as to the allegations sought to beestablished. It is intermediate; being more than a merepreponderance, but not to the extent of such certainty as isrequired beyond a reasonable doubt as in criminal cases. It doesnot mean clear and unequivocal.
 Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118, citing Merrick v. Ditzler (1915), 91 Ohio St. 256,110 N.E. 493. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross, supra (citations omitted). Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.
 {¶ 14} Applying the test laid out in R.C. 2151.414(B)(1), the trial court properly found under the second part of the test that the children "cannot be placed with either of the [children's] parents within a reasonable time or should not be placed with the [children's] parents." R.C. 2151.414(B)(1)(a). In making this determination, the trial court is required to consider "all relevant evidence." R.C. 2151.414(E). That section also provides a list sixteen factors a court shall consider when determining whether a child can be placed with either parent within a reasonable time. If the court finds any of those factors present, the court is required to find that the children cannot be placed with the parents within a reasonable time. Some of these factors include: (1) that the parents have "failed to remedy the conditions causing the child to be placed outside the child's home;" (2) that "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;" and (3) that the parents are unable to provide basic necessities for the child such as food, clothing, and shelter. Id. The court may also consider "any other factor the court considers relevant." R.C. 2151.414(E)(16).
 {¶ 15} First, there is ample evidence that the Shriders have failed to remedy the unsatisfactory conditions in their home. The children were originally removed from the home due to lack of supervision, unsatisfactory housing environment, and failure to meet the basic needs of the children. Since the Department was given temporary custody of the children, the Shriders have had difficulty maintaining housing. They were evicted from their apartment in 2004 for failure to pay rent. Since that time they have lived with a couple sets of friends, but have not been in a stable environment. They also admitted at the hearing that their current living situation was not an appropriate environment to raise children. Moreover, their present circumstances make it almost impossible for them to provide for the basic needs of the children. Their financial difficulties and significant accumulated debt have left them cash-strapped to the point where they cannot provide for the children. Neither parent has been able to consistently maintain a job and they have no means of transportation to and from work due to being unable to get their vehicle out of impoundment.
 {¶ 16} Second, the parents have not shown a commitment to the children by fulfilling the goals of the case plan or regularly attending visitations with the children. The record indicates that they have missed numerous scheduled visitations with the children due to transportation problems and have missed or cancelled appointments with counselors from Patchworks House, a service agency providing counseling to the family. There were also several incidents of aggressive behavior when they did attend visitations with the children, including the incident that required personnel from the Department to contact the police, after which further visitations were stopped. Testimony also indicated that the Shriders had failed to consistently attend previously scheduled parenting classes in 2003 and 2004 and had repeatedly failed to show up for their intake appointment and were therefore prevented from enrolling in their parenting classes in 2005.
 {¶ 17} The foregoing testimony demonstrates sufficient evidence to support the trial court's conclusions that the children could not be placed with the parents within a reasonable time. The evidence before the court demonstrates that several factors listed in R.C. 2151.414(E) applied, requiring the trial court to make this finding. Moreover, Chris agreed with this assessment at the hearing, testifying that it would be at least six months before there was "a realistic basis for us to be completely prepared [to care for the children]."
 {¶ 18} R.C. 2151.414(B)(1) also requires the trial court to find by clear and convincing evidence that granting permanent custody to the Department is in the children's best interests. In making this determination, the trial court should look at all relevant factors, including those listed in R.C. 2151.414(D).
 {¶ 19} In the instant case, the record supports the trial court's finding that granting permanent custody to the Department is in the children's best interests. Simply put, the lack of supervision, the inadequacy of the home and failure of the parents to provide for the basic needs of the children, their failure to maintain stable housing and employment, as well as the parents' repeated failures to commit to the requirements of the case plan all demonstrate that a legally secure placement can only be achieved by granting permanent custody to the Department. See R.C. 2151.414(D)(4). Moreover, the parents have continuously failed to seek help in dealing with Cassie's disorders, disorders which require professional treatment. Finally, the record demonstrates that the children's behavior, hygiene, and outlook have all vastly improved since they have been placed in foster care. See R.C. 2151.414(D)(1). Accordingly, there is sufficient evidence to support the trial court's finding that a grant of permanent custody is in the children's best interests.
 {¶ 20} Based on the foregoing, the grant of permanent custody was not against the manifest weight of the evidence. There was sufficient evidence for the trial court to make its findings by a clear and convincing degree of proof. Chris's first and second assignments of error, as well as Niccole's first assignment of error, are overruled.
 Appointment of Separate Counsel {¶ 21} Both Chris and Niccole also challenge the trial court's failure to provide separate counsel for each of the parties to the trial court proceedings. In his third assignment of error, Chris contends:
The trial court erred by not making a finding on the record asto the wishes of the children and not appointing them separatecounsel.
Niccole's second assignment of error provides:
The Wyandot County Juvenile Court violated the Appellants'Sixth Amendment right to a fair trial by not providing each partytheir own separate counsel including an attorney for each of thechildren and an attorney for each parent.
 {¶ 22} First, both parties argue that the trial court failed to ascertain the wishes of the children and should have appointed them independent counsel in order to protect their interests. The Supreme Court of Ohio has addressed the issue of whether children who are the subject of proceedings to terminate parental rights should receive separate counsel. See In re Williams,101 Ohio St.3d 398, 2004-Ohio-1500. In Williams, the Court examined R.C.2151.352 and Juv.R. 4(A) and determined that the children were a "party" in these proceedings and were entitled to representation in certain circumstances. Id. at ¶ 29. The Court then stated, "courts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." Id. at ¶ 17. In reaching this holding, the Court noted the potential for conflict in appointing a guardian ad litem to serve as the child's counsel, for the duty of the guardian ad litem is to recommend to the court what she feels is in the child's best interests and the duty of appointed counsel is to zealously represent her client. Id. at ¶ 18.
 {¶ 23} We have previously examined the Williams decision and held that a court did not err in failing to appoint separate counsel where the children lacked the necessary maturity to make a meaningful representation of their wishes and there was overwhelming evidence to support the court's findings that termination of parental rights was in the child's best interests.In the Matter of: Lane, Marion App. No. 9-03-61 9-03-62,2004-Ohio-2798, at ¶ 45. In Lane, the trial court had not appointed counsel for the children and had not specifically appointed the guardian ad litem to serve as counsel. However, there was testimony in the record indicating at least the potential for the children's wishes to be contrary to the guardian's recommendation. Id. However, due to the children's young age and immaturity, we concluded that the circumstances did not require appointment of separate counsel for the children. Id.; see also In the Matter of: Brooks, 10th Dist. No. 04AP-164, 04AP-202, 04AP-165, 04AP-201, 2004-Ohio-3887, at ¶ 85-87.
 {¶ 24} In the instant case, the record indicates that the children were six and four-years-old, respectively, at the time at the time of the hearing on the motion for permanent custody. Shawn had been described as a "typical four-year-old," but Cassie was by no means a typical six-year-old. There was ample testimony in the record pertaining to her immaturity, her social disorders, and her relatively low IQ. There was also testimony concerning her behavioral problems while in foster care, particularly surrounding her masturbation. Simply put, the children lacked the necessary maturity to give any credible testimony to the court about their wishes with regard to custody.
 {¶ 25} Accordingly, a thorough review of the record leads us to conclude that in the circumstances of the instant case, appointment of counsel for the children was not required underWilliams. Due to their relative immaturity, any error in failing to ascertain the children's wishes for purposes of determining whether appointment of counsel was necessary was harmless. See Brooks, at ¶ 87. As we noted in Lane, the trial court would be well advised to more specifically address the wishes of the children in these cases if possible. Under the circumstances of the instant case, however, we cannot find reversible error.
 {¶ 26} Second, Niccole also argues that the trial court erred in failing to appoint separate counsel for each of the parents. R.C. 2151.352 calls for appointment of separate counsel for the parents under certain circumstances. The statute provides:
A child or the children's parents, custodian, or other personin loco parentis is entitled to representation by legal counselat all stages of the proceedings under this chapter * * *. Ifthe interests of two or more such parties conflict, separatecounsel shall be provided for each of them.
R.C. 2151.352 (emphasis added). Thus, the mandatory language of the statute requires appointment of separate counsel if the parents' interests are in conflict. However, neither parent sought appointment of individual counsel during the course of the proceedings before the trial court, and neither parent asserted interests separate from the other. Having raised this issue for the first time on appeal, Niccole is required to demonstrate plain error on the part of the trial court. "In civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself." In re A.S., 10th Dist. No. 05AP-351, 05AP-352, 2005 WL 2650108, at ¶ 15 (citingGoldfuss v. Davidson (1997), 79 Ohio St.3d 116,679 N.E.2d 1099, syllabus).
 {¶ 27} We find that there was no plain error in the trial court proceedings. At the time of the hearing on the motion for permanent custody, the parents were still married and were still living together. Although they were going through marriage counseling, there is no indication in the record that a separation was imminent or even likely. There was never any suggestion by either parent that reunification with the children was possible with one parent and not the other. In no way has there been a demonstration that the parent's interests were in conflict.
 {¶ 28} In fact, the record indicates that parents were informed at the initial hearing when new counsel was appointed for them that the court should be advised if there was any conflict in representing both parents. Their current counsel at that hearing indicated to the court that there was no conflict in representing both parents. Thereafter, neither appointed counsel nor either of the parents raised a conflict in having the same counsel represent both parents.
 {¶ 29} Accordingly, we find that there was no plain error in not appointing separate counsel to represent the interests of the parents. The parties have failed to demonstrate that the fairness or integrity of the proceedings were impugned due to the failure to appoint separate counsel. Based on the foregoing, Chris's third and Niccole's second assignments of error are overruled.
 Chris Shrider's Testimony {¶ 30} In his fourth assignment of error, Chris contends:
The trial court erred in allowing [Chris] to be called totestify as if on cross-examination in violation of hisFifth Amendment right against self-incrimination.
 {¶ 31} In his final assignment of error, Chris argues that the trial court erred by permitting the Department to call him to testify as if on cross-examination, and then eliciting testimony concerning past criminal conduct. Chris contends that he should have been informed of his Fifth Amendment right not to incriminate himself. Again, he failed to object at trial to not being informed of his Fifth Amendment right and therefore waives any error relative to that testimony absent plain error. Statev. Lindsey (2000), 87 Ohio St.3d 479, 482, 721 N.E.2d 995. "Plain error consists of an obvious error or defect in the trial proceedings that affects a substantial right." Id.; Crim.R. 52(B).
 {¶ 32} Chris specifically objects to being subjected to questions pertaining to his stay at the Rehabilitation Opportunity Center and questions regarding his criminal history. However, he has failed to establish that he was compelled to testify and he has not shown any prejudice resulting from his testimony.
 {¶ 33} It is well recognized that Fifth Amendment[2]
protection applies in both civil and criminal proceedings.Lefkowitz v. Turley (1973), 414 U.S. 70, 77, 94 S.Ct. 316;Tedeschi v. Grover (1988), 39 Ohio App.3d 109, 110,529 N.E.2d 480. In a criminal proceeding, the Amendment protects a criminal defendant from having to testify. Lefkowitz, 414 U.S. at 77. In a civil proceeding, the Fifth Amendment "prohibits the state fromcompelling a witness to testify as to matters which may tend to incriminate in subsequent proceedings." Tedeschi,39 Ohio App.3d at 111 (emphasis added). "Compulsion, in this sense, arises whenever some penalty, be it imprisonment or economic coercion, is imposed for failing to offer testimony." Id.;Lefkowitz, 414 U.S. at 77-79.
 {¶ 34} There was no compulsion in the instant case. Moreover, had there been compulsion with regard to his testimony, this would not have affected the use of his testimony in the proceedings below:
[A] witness protected by the [Fifth Amendment] privilege mayrightfully refuse to answer unless and until he is protected atleast against the use of his compelled answers and evidencederived therefrom in any subsequent criminal case in which he isa defendant. Absent such protection, if he is neverthelesscompelled to answer, his answers are inadmissible against him ina later criminal prosecution.
 Lefkowitz, 414 U.S. at 78 (internal citations omitted).Fifth Amendment protection would not have allowed Chris to completely refuse to testify; he would have been permitted to refuse only until he was ordered to answer by the court. Thereafter, the Amendment's protection would not have permitted him to refuse, but it would have protected him from having his testimony and any evidence derived from that testimony used against him in a later criminal proceeding.
 {¶ 35} Regardless, Chris never asserted his Fifth Amendment rights and he subjected himself to cross-examination when he voluntarily testified under direct examination. Moreover, the testimony he is objecting to contained no incriminating statements, as he was answering questions regarding previous criminal conduct for which he had already been prosecuted.
 {¶ 36} Finally, the error that he asserts — that the trial court should have advised him of his right not to testify — does not constitute error. Were we to require the trial court to advise Chris of this right in the instant case, we would effectively be requiring the court to inform every witness who testified in any proceeding of the Fifth Amendment right. This has never been the rule for civil proceedings. Accordingly, based on the foregoing Chris's fourth assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 37} In her third assignment of error, Niccole contends:
Appellants' counsel's performance was so seriously deficientthat counsel's performance, or lack thereof, prejudiced theparents' case so as to deprive the appellants of a fair trial,and the result that a fair hearing would have rendered and thusdenied the appellant's their Sixth Amendment right (guarantee) tocounsel.
As previously noted, R.C. 2151.352 provides the parents with a right to counsel in proceedings to terminate parental rights. The right to counsel includes a right to the effective assistance of counsel: "Where the proceeding contemplates the loss of parents' `essential' and `basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." Inre Heston (1998), 129 Ohio App.3d 825, 827; see also, In reBrodbeck (1994), 97 Ohio App.3d 652, 657.
 {¶ 38} The Supreme Court of Ohio has adopted a two-part test for determining claims of ineffective assistance of counsel in criminal prosecutions. See State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus (following Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674). "[Appellant] must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v.Jones (Sept. 27, 2000), Auglaize App. No. 02-2000-07, 2000 WL 1420271, *2, quoting Strickland, 466 U.S. at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley,42 Ohio St.3d at 142, 538 N.E.2d 373. The second prong regarding reasonable probability requires a probability sufficient to undermine the confidence in the outcome of the trial. Id.
 {¶ 39} Niccole makes four arguments in support of her claim for ineffective assistance of counsel. First, she claims that her first counsel, Mr. Mason, was ineffective because he sought to withdraw from the case and have his colleague take his place. Second, she asserts that Mason did not provide effective assistance for the remainder of that hearing after he was permitted to withdraw. Third, she argues that her new counsel, Mr. Johnson, was ineffective because he never sought to have separate counsel appointed for each of the parents. Finally, she claims that counsel was ineffective for failing to object to certain hearsay statements made at the permanent custody hearing.
 {¶ 40} With regard to her first two objections, Mr. Mason sought to have another attorney in his office appointed to represent the Shriders for purposes of the motion for permanent custody. The trial court asked the Shriders if they wished Mr. Mason to be re-appointed to represent them in litigating that motion, and Mr. Mason indicated it would be best for all involved if Mr. Johnson were appointed due to scheduling concerns. The fact that her counsel sought to have a different attorney appointed does not demonstrate deficient performance, and Niccole has failed to demonstrate that she was prejudiced in any manner by having a second counsel appointed. Moreover, Mr. Mason continued to represent the Shriders for the duration of that hearing — a hearing to review the grant of temporary custody to the Department. The record indicates that Mr. Johnson was appointed to handle the motion for permanent custody, while the hearing in question did not adjudicate that motion. Thus, Niccole has failed to demonstrate deficient performance of counsel at the hearing in question.
 {¶ 41} Next, Mr. Johnson's failure to seek appointment of separate counsel does not rise to the level of ineffective assistance. As previously noted, there is no indication in the record that the parent's interests were in conflict, and thus no evidence that separate counsel was required. Niccole has failed to establish any grounds requiring appointment of separate counsel, and therefore she has failed to demonstrate that counsel's performance was deficient due to his failure to seek separate counsel.
 {¶ 42} Finally, Niccole argues that counsel was ineffective because he failed to object to hearsay testimony offered by Jessica Hammer, a counselor from the Betty Jane Center. Ms. Hammer testified that she relied on representations made by the parents to Dr. Barnes, who was Cassie's psychologist, in formulating her treatment plan for Cassie. These representations were contained in Dr. Barnes' report, and Ms. Hammer specifically referenced some of the representations when describing her treatment plan for Cassie.
 {¶ 43} The record does indicate, however, that the Shriders' counsel objected to Ms. Hammer's referencing statements made by the Shriders to Dr. Barnes. The trial court did not directly rule on the objection, but through discussion with counsel for the department determined that these representations were not offered for their truth but rather as a foundation for establishing the basis on which Ms. Hammer formulated her case plan. Ms. Hammer testified that she regularly relied on Dr. Barnes' reports in formulating a treatment plan, and that she did so in the instant case. Therefore, the representations made by the Shriders were not offered for their truth, and, as the trial court recognized, the judge was certainly free to discount the credibility of Ms. Hammer's testimony had there been evidence that the representations made to Dr. Barnes were inaccurate. Regardless, trial counsel acted reasonably in objecting to the statements; he need not reassert his objection after the court made clear it was going to allow the testimony.
 {¶ 44} Accordingly, the appellant has failed to establish that counsel's performance was deficient in any form. Moreover, she has certainly failed to show prejudice resulting from any alleged deficiency. Based on the foregoing, Niccole's fourth assignment of error is overruled. The judgment of the trial court is hereby affirmed.
Judgment Affirmed.
 Bryant, P.J. and Rogers, J., concur.
[1] It appears from the parties' briefs that Chris and Niccole became separated some time after the ruling on the motion for permanent custody. They were still married and living together at the time of the hearing, and there is nothing in the record establishing when they separated.
[2] The Fifth Amendment to the United States Constitution provides: "No person * * * shall be compelled in any criminal case to be a witness against himself."