OPINION *Page 2 
{¶ 1} Appellant Andrew Myers, Sr., appeals from two judgments of the Seneca County Court of Common Pleas, Juvenile Division, which respectively found his 13-year-old daughter, Linda Myers, to be a dependent child under R.C. 2151.04(C) and placed her in the temporary custody of the Seneca County Department of Job and Family Services (SCDJFS). For the reasons that follow, we affirm the trial court's judgments in all respects. *Page 3 
 {¶ 2} Myers and Tina Hush Waters divorced in 1995. At that time, Myers and Waters had two children: Andrew Myers, Jr. (A.J.), born January 24, 1991; and Linda, born September 17, 1993. Waters initially received custody of the children and served as the residential parent. Several years later, however, Myers obtained custody of the children and served as the residential parent. According to Myers, the change occurred when Waters left the children and moved to Florida.
 {¶ 3} Myers, A.J., and Linda lived together in an apartment located in the city of Tiffin, Seneca County, Ohio. A neighbor, Brad Marker, lived with his fiancée, Amanda Shulaw, and the couple's three children. The two families developed a relationship over time, and Linda became particularly close with Shulaw.
 {¶ 4} In October 2005, Marker and Shulaw moved to a home in the city of Bloomville, Seneca County, Ohio. Linda continued to spend time with Marker and Shulaw and stayed overnight at the couple's home. To facilitate visits, Marker and Shulaw provided Linda transportation because Myers did not own an automobile.
 {¶ 5} In February 2006, Myers, Marker, and Shulaw entered into an "informal agreement" whereby Linda moved from Tiffin to live with Marker and Shulaw in Bloomville. Linda continued to attend school in the Tiffin City School District. Unlike Linda, A.J. remained with Myers. *Page 4 
 {¶ 6} On July 13, 2006, Marker filed an unruly-child charge against Linda. To support his charge, Marker cited Linda's discipline problems and uncontrollable behavior. The SCDJFS immediately conducted an investigation. As a result, on July 14, 2006, the trial court placed Linda in the temporary custody of the SCDJFS.
 {¶ 7} On August 18, 2006, the SCDJFS filed a complaint in the Seneca County Court of Common Pleas, Juvenile Division. In its complaint, the SCDJFS alleged Linda was a dependent child under R.C. 2151.04(C) and requested the trial court place Linda in the temporary custody of the SCDJFS under R.C. 2151.353. Additionally, the SCDJFS filed a separate motion for temporary custody under R.C. 2151.33 and Juv.R. 13. The trial court granted the motion, and on September 6, 2006, the SCDJFS amended its complaint to allege that Linda was also a neglected child under R.C.2151.03(A)(5).
 {¶ 8} Following a two-day adjudicatory hearing, the trial court issued a judgment entry on October 26, 2006. In the entry, the trial court found Linda to be dependent but not neglected. The trial court subsequently held a dispositional hearing and issued a second judgment entry on November 9, 2006, that placed Linda in the temporary custody of the SCDJFS.
 {¶ 9} Myers now appeals to this court and sets forth three assignments of error for our review. Although Myers appeals from both the first judgment entry *Page 5 
and the second judgment entry, none of the assignments of error relate directly to the dispositional hearing, the second judgment entry, or the trial court's decision to place Linda in the temporary custody of the SCDJFS.
 ASSIGNMENT OF ERROR NO. I The trial court [sic] in finding that Linda Myers is a dependent child.
 {¶ 10} In his first assignment of error, Myers argues he placed Linda with Marker and Shulaw, who provided Linda proper care and support. Relying on this court's plurality opinion in In re Stoll, 3d Dist. Nos. 15-05-08, 15-05-09, 2006-Ohio-346, Myers concludes the trial court erred when it found Linda to be a dependent child under R.C. 2151.04(C).
 {¶ 11} A trial court's finding that a child is dependent under R.C.2151.04 must be supported by clear and convincing evidence. R.C.2151.35(A)(1) and Juv.R. 29(E)(4). "[C]lear and convincing evidence is that measure of degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118, citing Merrick v. Ditzler (1915),91 Ohio St. 256, 267, 110 N.E. 493. On appeal, we must examine the record and determine whether the trial court's finding, that Linda was a dependent child under R.C. 2151.04(C), meets the clear-and-convincing standard. See id. *Page 6 
 {¶ 12} R.C. 2151.04 defines the term "dependent child." The division of the statute at issue in this case, R.C. 2151.04(C), provides: "As used in this chapter, `dependent child' means any child: * * * Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."
 {¶ 13} In an adjudicatory hearing, the focus is on the child's condition and environment to determine whether the child is without proper care or support. In re Riddle (1997), 79 Ohio St.3d 259, 262,680 N.E.2d 1227; In re Hurst, 3d Dist. Nos. 13-03-27, 13-03-28,2003-Ohio-5460, at ¶ 10. The focus is not on the parents' faults. Id. The parents' faults may, however, be considered insofar as they have a negative impact on the child's condition and environment. In reBurrell (1979), 58 Ohio St.2d 37, 39, 12 O.O.3d 43, 388 N.E.2d 738.
 {¶ 14} In this case, four witnesses testified during the adjudicatory hearing: Myers, Marker, and two social workers for the SCDJFS, Carolyn Dorn and Erica Cleveland. Notably, Myers' testimony is limited and does not pertain to our analysis of this assignment of error in any way. As such, we discuss it in our analysis of the third assignment of error.
 {¶ 15} During the adjudicatory hearing, Marker testified Linda began living in his home as a "last resort" because Myers could not control her. According to Marker, he and Shulaw thought that they could help Linda and provided her *Page 7 
necessities with little to no assistance from Myers, who would call and visit infrequently. In regards to Linda's behavior, Marker testified: Linda required 24-hour supervision; on one occasion, Linda punched Shulaw in the face with enough force to cause Shulaw's glasses to fly across the room; and Linda stayed out past curfew, used profanity, and stole tobacco products. Marker further testified: like Myers, he could not control Linda; he had to physically restrain Linda on multiple occasions during her outbursts; he was forced to call the police at different times as a result of Linda's behavior; and he did not want Linda to return to his home after he filed the unruly-child charge against her.[1]
 {¶ 16} Dorn spoke with Myers and Linda after Linda was placed in the temporary custody of the SCDJFS on July 14, 2006. Dorn testified she specifically asked Myers if he wanted Linda back and that Myers immediately changed the subject. Dorn also testified Myers later stated he did not want Linda back because her relationship with A.J. created tension in the home.
 {¶ 17} Cleveland spoke with Myers and Linda after the SCDJFS filed its initial complaint on August 18, 2006. Cleveland testified that when she asked Myers if he wanted Linda back in his home, Myers stated that he did but then indicated that he did not. Cleveland also testified that Linda had many unresolved issues, lied incessantly "about everything," and suffered from a learning disability *Page 8 
and around-the-clock incontinence. Cleveland then opined Myers was not capable of meeting Linda's needs and that it was not safe or healthy for Linda to return home.
 {¶ 18} In addition, the record reflects that Linda's mother, Waters, has been absent much of Linda's life and recently remarried and moved from Florida to Georgia. The record further reflects that Waters met with Linda for a short period of time after Linda was placed in the temporary custody of the SCDJFS on July 14, 2006. But, nothing suggests that Waters provided Linda with proper care and support, other than limited child support that she paid to Myers, at any time.
 {¶ 19} In sum, the testimony and evidence in the record indicate Linda's condition and environment, whether viewed from the time the SCDJFS filed its initial complaint or from the time the trial court held the adjudicatory hearing, warranted the state assuming her guardianship. See R.C. 2151.04(C). No one provided Linda with proper care and support during the relevant time period. And, unfortunately, it is equally clear from the testimony and evidence that no one wanted Linda to return to live with them.
 {¶ 20} Nonetheless, Myers argues the trial court erred when it found Linda to be a dependent child. This is so, Myers argues, because he placed Linda with Marker and Shulaw, who provided Linda proper care and support. Myers relies on *Page 9 
this court's plurality opinion in In re Stoll, 3d Dist. Nos. 15-05-08, 15-05-09, 2006-Ohio-346.
 {¶ 21} Myers' argument lacks merit. Even if Marker and Shulaw provided Linda proper care and support in the past, it is undisputed that they did not do so after Marker filed the unruly-child charge, and Linda did not live with Marker and Shulaw when the SCDJFS filed its initial complaint or when the trial court held the adjudicatory hearing in this case. Additionally, Stoll, a plurality opinion, involved a decidedly different set of facts in which a parent entrusted a child to relatives prior to entering drug rehabilitation. Stoll at ¶ 25. Stoll is clearly distinguishable from this case and is therefore not controlling.
 {¶ 22} Given the foregoing, the trial court's finding, that Linda was a dependent child under R.C. 2151.04(C), meets the applicable clear-and-convincing standard. Accordingly, the first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred by admitting hearsay statements by Linda Myers into evidence over the objection of the appellant.
 {¶ 23} In his second assignment of error, Myers argues the trial court admitted hearsay statements during the adjudicatory hearing. Myers also argues the trial court relied on the hearsay statements when it found Linda to be a dependent child under R.C. 2151.04(C). Myers thus concludes the trial court erred in this regard. *Page 10 
 {¶ 24} Specifically, Myers asserts the trial court permitted Dorn and Cleveland to testify during the adjudicatory hearing regarding statements Linda and others made to them. For example, Dorn and Cleveland testified Linda told them A.J. had held a knife to her throat, A.J. had sexually abused her, and the incidents occurred when she lived with Myers. Dorn and Cleveland also testified Linda initially told them Myers "probably" sexually abused her while she slept but that Linda later recanted the allegation.
 {¶ 25} Myers argues the statements at issue all constitute inadmissible hearsay. See Evid.R. 802. In opposition, the SCDJFS argues: the statements constitute non-hearsay admissions of a party-opponent, Evid.R. 801(D)(2); and, if the statements constitute hearsay, the statements fit within an exception regarding Linda's state of mind and are admissible, Evid.R. 803(3).
 {¶ 26} Even if we assume, arguendo, the trial court erred when it permitted Dorn and Cleveland to testify regarding the statements Linda and others made to them, we cannot say the trial court erred when it found Linda to be a dependent child under R.C. 2151.04(C). As we discussed in our analysis of the first assignment of error, ample testimony and evidence exist in the record, aside from Linda's statements to Dorn and Cleveland, to support the trial court's finding in this case.
 {¶ 27} The second assignment of error is overruled. *Page 11 
 ASSIGNMENT OF ERROR NO. Ill The trial court erred by permitting the Department of Job and Family Services to call appellant as a witness.
 {¶ 28} In his third assignment of error, Myers argues the trial court violated his rights under the Fifth Amendment to the United States Constitution when it permitted the SCDJFS to call him as a witness on cross-examination during the adjudicatory hearing. To support his argument, Myers cites two decisions from the Eighth District Court of Appeals, In re Billman (1993), 92 Ohio App.3d 279, 643 N.E.2d 1050, andIn re Knight (1999), 135 Ohio App.3d 172, 733 N.E.2d 303.
 {¶ 29} During the adjudicatory hearing, the SCDJFS called Myers to testify on cross-examination. In response, Myers raised theFifth Amendment protection against self-incrimination and argued that any testimony he offered subjected him to criminal liability, specifically under R.C. 5103.16 and 5103.17. The trial court disagreed and permitted the SCDJFS to call Myers as a witness. Thereafter, Myers answered some questions but raised the Fifth Amendment protection to others. When Myers raised the protection, the trial court directed opposing counsel to stop questioning Myers or opposing counsel did so voluntarily.
 {¶ 30} This court recently discussed the application of theFifth Amendment protection against self-incrimination, in dicta, in an analogous case, In re Shrider, 3d Dist. No. 16-05-20, 2006-Ohio-2792.Shrider is factually distinguishable because the witness did not raise the Fifth Amendment protection, *Page 12 
voluntarily testified on direct examination, and had already been prosecuted for various criminal acts. Despite some differences, our general discussion in Shrider is applicable here.
 {¶ 31} The Fifth Amendment to the United States Constitution provides, in pertinent part, as follows: "No person * * * shall be compelled in any criminal case to be a witness against himself."
 {¶ 32} The Fifth Amendment applies in both criminal and civil proceedings. Shrider at ¶ 33, citing Lefkowitz v. Turley (1973), 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.E.2d 274; Tedeschi v. Grover (1988),39 Ohio App.3d 109, 110, 529 N.E.2d 480. In a criminal proceeding, theFifth Amendment permits a criminal defendant to completely refuse to testify. Id. By contrast, in a civil proceeding, the Fifth Amendment prohibits the state from compelling a witness to testify regarding a matter that "may tend to incriminate" the witness in a future criminal proceeding. Tedeschi, 39 Ohio App.3d at 111, 529 N.E.2d 48. "Compulsion, in this sense, arises whenever some penalty * * * is imposed for failing to offer testimony." Id.
 {¶ 33} The Fifth Amendment protection against self-incrimination did not permit Myers to completely refuse to testify. See Shrider at ¶ 34; see, also, Billman, 92 Ohio App.3d at 282-284, 643 N.E.2d 1050 (Harper, J., dissenting). And a review of the testimony at issue indicates the trial court did not, at any time, *Page 13 
compel Myers to answer any questions. Furthermore, Myers did not answer a single question or make a statement that would incriminate him in a subsequent criminal proceeding. His testimony was, quite simply, limited.
 {¶ 34} For the foregoing reasons, we cannot say that the trial court violated Myers' rights under the Fifth Amendment when it permitted the SCDJFS to call him as a witness on cross-examination during the adjudicatory hearing. Nor can we say that any prejudice resulted from the trial court permitting the SCDJFS to do so in this case. Thus, the third assignment of error is overruled.
 {¶ 35} Having found no error prejudicial to Myers in the particulars assigned and argued, we affirm the trial court's judgments in all respects.
Judgment affirmed.
 ROGERS, P.J., and SHAW, J., concur. r
[1] The record reflects that the unruly-child charge was later dismissed, but does not disclose why. See R.C. 2151.022. *Page 1