**In re WARD, a Dependent Child.**

[Cite as *In re Ward* (1992), 75 Ohio App.3d 377.]

Court of Appeals of Ohio,
Defiance County.

No. 4-91-15.

Decided May 22, 1992.

378

*John P. Goldenetz,* for appellant.

*Peter R. Seibel,* Prosecuting Attorney, and *Timothy R. Hutchinson,* Assistant Prosecuting Attorney, for appellee.

---

HADLEY, Presiding Judge.

Appellant, Sheila Wilder–Ward, appeals from a judgment of the Court of Common Pleas of Defiance County, Juvenile Division, which adjudicated her child, Justin Ward, as dependent, and granted temporary custody of Justin to the Defiance County Department of Human Services ("Human Services") for a period of one year.

Appellant previously had a common law marriage with Bill Ward and had one son, Justin, born March 23, 1982. Appellant was diagnosed with diabetes in approximately 1984 and began having hypoglycemic reactions in 1986. Since approximately 1986, appellant has been raising Justin by herself. On

August 24, 1990, Human Services filed a complaint alleging that Justin was suffering from neglect and dependency in his home and requested that the court place temporary custody with Human Services or, in the alternative, leave custody of Justin with appellant and place him under the protective supervision of Human Services. On November 6, 1990, Human Services filed an amended complaint which contained an additional allegation of abuse. On November 30, 1990, a hearing was held wherein appellant and Bill Ward stipulated and the court found that Justin was a dependent child and ordered him to be placed under the protective supervision of Human Services, with custody remaining with appellant. The charges of neglect and abuse were dismissed.

In February 1991, after being transported to the Defiance Hospital by the emergency medical services for diabetes complications, the court ordered appellant to remain in the hospital for evaluation for three days. On April 10, 1991, Human Services moved to modify the disposition of Justin to place him in the temporary custody of Human Services. On May 2, 1991, Human Services filed an amended motion to modify the disposition of Justin, again requesting temporary custody. A partial hearing was held on May 3 and 6, 1991. On May 20, 1991, the court ordered that until the completion of the hearing in June, Justin would remain in the protective supervision of Human Services. After a further hearing in July, the court ordered on July 24, 1991, that Justin be placed in temporary custody of Human Services for one year.

It is from this judgment that appellant asserts three assignments of error:

## Assignment of Error No. 1

"The evidence presented was insufficient to justify the trial court's finding that removing the child from his mother's custody was in his best interest."

Appellant argues that the testimony presented at the hearings in May and June was not sufficient for the trial court to order that Human Services should be granted temporary custody of Justin. The judgment of the juvenile court will not be reversed if there was sufficient evidence to support the court's finding. *In re Henderson* (1986), 30 Ohio App.3d 187, 190, 30 OBR 329, 332, 507 N.E.2d 418, 420. Further, a court exercising jurisdiction over the custody and welfare of children has a great deal of discretion. *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774.

A review of the record discloses that there was sufficient evidence for the trial court to conclude that Justin should be placed in temporary custody with Human Services. It was uncontradicted that appellant is a diabetic and has had numerous hypoglycemic reactions wherein she tends to be confused and hungry and, eventually, loses consciousness if proper care is not taken.

These episodes not only leave Justin without anyone to care for him, but also require Justin to take care of his mother. Since appellant is a single mother, Justin is left unsupervised for sporadic periods. Also, there was evidence in the record that there were at least eight emergency medical service runs to appellant's residence during the first four months of 1991. Although there was testimony that Justin will stay with a neighbor or other friend during these emergency medical runs, there is still some time he spends without adult supervision during the time he finds his mother unresponsive and waits for the ambulance to arrive.

As noted above, Justin must also take care of his mother. The evidence suggests that the many of appellant's diabetic reactions occur in the late evening or early morning hours. Justin will usually get up to take care of appellant and/or wait for emergency medical service, if that is required. This has resulted in a loss of a few hours of sleep on the night of the reaction. His teacher and guidance counselor both indicated that his performance at school suffered during April and that he has been tardy several days, had several half days (missing the first half of school in the morning), and missed several complete days of school.

His teacher noted that he was an A and B student at the beginning of the school year and had fallen to C's by the time of the hearing in May. She also noted that he was unable to concentrate, was depressed, and was not happy since sometime in April. His guidance counselor also noted these same qualities and noted, in addition, that Justin was more tired and not listening. Justin acknowledged that he was sometimes late to school because he had been up taking care of his mother at night.

Further evidence supporting the trial court's finding was that the court had ordered in its November 30, 1990 judgment entry that appellant and Justin attend counselling. There was evidence that she and Justin only went once between that time and the time of the May hearing. In the court's May 20, 1991 journal entry it again ordered that appellant and Justin attend counselling at the Maumee Valley Guidance Center. There is no evidence that appellant and Justin ever attended such counselling.

There was also evidence contained in the record from appellant's physician. Although he noted that appellant had been in control of her diabetes for a three- or four-month period (at the time of his deposition), if she would cooperate and become more active in her treatment, she would have fewer reactions and the reactions would be less severe.

Therefore, considering all the evidence presented to the trial court, it had sufficient evidence to order that Justin be placed in temporary custody with Human Services. This assignment of error is overruled.

## Assignment of Error No. 2

"The court's removal of the child from his mother solely because she is an insulin-dependent diabetic constitutes an abuse of discretion."

Appellant argues that the trial court based its July 24 order on the sole fact that appellant was a diabetic and this constituted an abuse of discretion. An abuse of discretion means that the court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1141. Herein, the trial court did not abuse its discretion in considering appellant's diabetes when ordering Justin be placed in the temporary custody of Human Services.

Appellant makes the assertion that the trial court reasoned that because she had diabetes, Justin must be placed in someone else's custody, even though there was no evidence that Justin suffered because of appellant's condition. This is not correct. The trial court had ample evidence that because of appellant's condition and her lack of desire to improve her condition, Justin suffered. As noted above, the evidence was such that the trial court could conclude that Justin's grades were suffering because of his worry and care of appellant, that he missed school because he was awake late at night taking care of his mother when she would have a hypoglycemic reaction, and that there were times he was without adult supervision because of these reactions.

Further, appellant argues that she can not predict when she will have a reaction and, therefore, should not be denied custody of her son simply because she suffers from diabetes. However, as her own physician has pointed out, there are other treatments she could try to make the reactions occur less often and make them less severe. Also, if she were to receive counselling, a plan might be able to be worked out whereby Justin would not bear the heavy responsibility of taking care of his mother in the late evening and early morning hours.

Therefore, since there was evidence that appellant's diabetes does effect the care and welfare of her child, the trial court did not abuse its discretion. This assignment of error is overruled.

## Assignment of Error No. 3

"The court order removing the child from his home to be placed in foster care by the department of Human Services for a period of one year from the date of the order is in violation of specific statutory mandates and is therefore invalid."

Appellant argues that pursuant to R.C. 2151.353(F), the trial court could not properly order temporary custody for any time that extended one year beyond the date of the complaint filed in this case. We do not agree with

appellant's contention that the one-year limitation on the temporary custody order should begin running in this case on November 5, 1990, as alleged by appellant. We conclude that, in the absence of an extension pursuant to R.C. 2151.415, Justin should have been released on April 10, 1992.

Relevant to this issue is R.C. 2151.353(F), which states:

"Any temporary custody order issued pursuant to division (A) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section."

There is no dispute herein that there were no motions to extend the temporary custody order of July 24, 1991. Therefore, it must be determined the date of the one-year expiration period from the earlier of the date the complaint was filed or the date Justin was first placed into shelter care. Justin was not placed into shelter care prior to the temporary custody order; therefore, the determinative date is based on the filing of the complaint.

A strict interpretation of the language of R.C. 2151.353(F) can not be permitted. If a strict interpretation was applied, the result would distort the intent of the legislature. Rather, that provision of the statute must be read in light of all the provisions of R.C. 2151.353.

R.C. 2151.353(A) allows a court to choose one of five dispositions after an adjudicatory hearing has been held finding that a child is abused, neglected, or dependent. After a disposition is made, that court retains continuing jurisdiction over the child until the child attains the age of eighteen. R.C. 2151.-353(E)(1). Therefore, after a disposition is made, the statute permits a party, including a department of human services, to file a motion with the court asking it to terminate or modify its prior disposition made pursuant to R.C. 2151.353(A) and have a new dispositional hearing. R.C. 2151.353(E)(2).

If R.C. 2151.353(E)(2) did not allow a party to *file a motion* with the court requesting that it hold a hearing concerning a new disposition, we would strictly apply the language of R.C. 2151.353(F) and require that the one-year limitation contained therein be dated from the date of the complaint. However, because the legislature included provision (E)(2), we must also interpret the word "complaint," contained in provision (F), to include "filing a motion." If not, an unreasonable result could occur not intended by the legislature.[1] A

---

1. For example, a childrens services agency files a complaint against an individual for child neglect on January 1, 1990 and requests temporary custody. The juvenile court holds a

court is required, if the language permits, to construe a statute to avoid unreasonable or absurd results, as the legislature is presumed not to have intended to enact a law which would produce unreasonable or absurd consequences. *Canton v. Imperial Bowling Lanes* (1968), 16 Ohio St.2d 47, 45 O.O.2d 327, 242 N.E.2d 566, paragraph four of the syllabus.

Relying not only on this possible unreasonable result, we also consider the case of *McNeal v. Miami Cty. Children's Serv. Bd.* (Feb. 12, 1991), Miami App. No. 90–CA–29, unreported, 1991 WL 19395, as persuasive. Therein, the childrens services agency sought in its complaint, either protective supervision or temporary custody of McNeal's children in June 1989. In July 1989, it was ordered that legal custody remain with McNeal and protective supervision be granted to the agency. In January 1990, the agency moved for temporary custody and after a dispositional hearing was held, the agency was awarded temporary custody of the McNeal children. The appellate court agreed with the referee that the one-year limitation of R.C. 2151.353(F) should run from the date of the agency's request in January 1990, rather than from the filing of the original complaint in June 1989. In so concluding, the court stated:

"Although a literal reading of R.C. 2151.353(F) might support McNeal's position, we agree with MCCSB [agency] and Referee Wolf that the better, and more practical, interpretation is that the one-year limitation upon a temporary custody order should be deemed to run from the time when that temporary custody order was requested, rather than some earlier time when a protective supervision order was sought.

"The purpose for the one-year limitation upon a temporary custody order is evidently to allow some time within which the children services agency and the parent can work on a case plan or a reunification plan, so that, in a subsequent dispositional hearing, it can be determined whether the child should be returned to the parent and temporary custody order should be dissolved, or whether the temporary custody order should be extended to allow further time, or whether a permanent change in the child's custody

---

bifurcated hearing and on June 2, 1990, determines that the child is neglected and should be placed in the protective supervision of the agency. On January 1, 1992, the circumstances change and the agency believes that it should have temporary custody. Therefore, it files a motion with the court, pursuant to R.C. 2151.353(E)(2), and requests the court to modify its prior disposition after a hearing and notice to all interested parties (assuming that the court has extended the protective supervision order beyond its one-year limitation, pursuant to R.C. 2151.353[G]). If "complaint" was interpreted strictly, the agency would be defeated from seeking temporary custody before the new hearing ever began. This is because R.C. 2151.353(F) would start the running of time from January 1, 1990, when the "complaint" was filed, rather than January 1, 1992, when a motion was filed requesting a change in disposition. Thus, the agency would be defeated on that basis alone from seeking a temporary custody order.

should be ordered. If, as McNeal argues, the one-year limitation upon a temporary custody order is deemed to relate back to the original request for an order of protective supervision, in a case like this one, where a protective supervision order is subsequently modified to a temporary custody order, that would reduce the period of time within which the children's services agency and the parent could be working on a reunification plan. It would also reduce the evidence that would be available to the juvenile court in a dispositional hearing, prior to the expiration of the one-year period, in determining whether reunification with the parent was a feasible alternative."

Following the rationale of *McNeal* and the purpose of the one-year limitation in R.C. 2151.353(F), we conclude that Justin could be placed in the temporary custody of Human Services until April 10, 1992. April 10, 1991, was the date of Human Services' request for temporary custody following a disposition of protective supervision. Although August 24, 1990 was the date of the original complaint, there was a disposition following this request. A subsequent request moved the date the one-year limitation of R.C. 2151.353(F) would expire. We interpret the "motion to modify disposition" of April 10, 1991 as the date the one-year limitation began to run for purposes of the trial court's July 24, 1991 order awarding temporary custody to Human Services. *McNeal, supra*; R.C. 2151.353(F).

On consideration of this assignment of error we find nothing invalid about the July 24, 1991 order of the court which placed Justin in the temporary custody of Human Services for one year. The court fixed no beginning and ending dates for the one-year period and it is undisputed that the court could order temporary custody for a one-year period. Thus, a careful reading of the applicable statutes is required to determine the date on which the order of temporary custody expires. We have concluded that the date of expiration is April 10, 1992. Nevertheless, the July 24, 1991 order of the trial court is not invalid and the assignment of error is overruled.

*Judgment affirmed.*

EVANS and SHAW, JJ., concur.