OPINION *Page 3 
{¶ 1} In this consolidated appeal of case numbers 5-08-37, 5-08-38, 5-08-39, and 5-08-40, Father-Appellant, Scott Freed, appeals the judgments of the Hancock County Court of Common Pleas, Juvenile Division, adjudicating his minor daughter, ED, an abused and dependent child, adjudicating his other minor children, EL, ZA, and AL, dependent children, ordering the children to remain in the custody of their mother, Danielle Freed, with protective supervision by Hancock County Job and Family Services, and ordering that Scott's visitation with the children be only upon the recommendation of the designated therapist. On appeal, Scott argues that the trial court's adjudication of ED as an abused and dependent child, and its adjudication of his other children as dependent, was against the manifest weight of the evidence; that the trial court erred in refusing to allow him to present two witnesses at the adjudication hearing; and, that the trial court erred in denying him parenting time with his children. Based upon the following, we affirm the judgments of the trial court.
 {¶ 2} Scott and Danielle Freed are the parents of ZA (D.O.B. 3/23/94), AL (D.O.B. 8/5/98), EL (D.O.B. 7/25/00), and ED (D.O.B. 7/25/00). At the time this action commenced, ZA, in Scott's custody, was committed to a juvenile residential center on an unrelated offense, and AL, EL, and ED were in Danielle's custody, with Scott having visitation with the children on weekends. *Page 4 
 {¶ 3} In May 2008, the Hancock County Job and Family Services, Child Protective Services Unit (hereinafter "CPSU"), filed a complaint alleging that ED was an abused, neglected, and dependent child pursuant to R.C. 2151.03(A)(2), (3), and (6); R.C. 2151.031(A), (B), and (D); and R.C. 2151.04(B) and (C); and, that the other children were dependent pursuant to R.C. 2151.04(B), (C), and (D). The complaint arose from an allegation by ED that Scott sexually abused her during his visitation time by kissing her all over, humping her, and rubbing his genitals against her genitals.
 {¶ 4} Additionally, CPSU filed a motion for predispositional interim orders, requesting that the children be placed under the protective supervision or in the temporary custody of CPSU; that Scott be denied contact with the children; that ZA be placed in Danielle's custody; and, that Scott complete a mental health evaluation and follow through with any ensuing recommendations. After a subsequent hearing on the motion, the trial court ordered that Scott have no contact with the children, and that the children be placed under the protective supervision of CPSU.
 {¶ 5} In July 2008, the trial court held an adjudication hearing, at which Holly Schweitzer-Dunn, an outpatient therapist at Family Resource Centers in Findlay, testified that she is a specialist in adolescent depression and child trauma; that she had been seeing EL for therapy on an unrelated matter when Danielle brought ED into one of EL's scheduled sessions; that Danielle brought ED in *Page 5 
because she had reported to Danielle's sister that Scott had been sexually abusing her; that, when she spoke with ED, ED informed her that, on multiple occasions when she visited her father without her sister, AL, her father tried to have sex with her, humped and kissed her, and "put[] [her] leg on top of him and one leg under him when he does it" (July 2008 adjudication hearing tr., p. 19); and, that she used these statements to diagnose and treat ED
 {¶ 6} Schweitzer-Dunn continued that she did not feel that ED was being coached to make these allegations; that Danielle even instructed ED to speak with her by herself, but, because she was uncomfortable doing so, Danielle went into the office with her and sat quietly while ED relayed the story; that ED came back to her office an another occasion so that a diagnostic assessment could be completed; that the diagnostic assessment was performed by another employee of Family Resource Centers, Alyssa Roach; that this assessment and the accompanying report were also used to treat and diagnose ED; that, according to the assessment report, ED relayed to Roach that her father tries to have sex with her while she is visiting him without her sister, that he took baths with her until she was age five, and that he sleeps with her when she is in her underwear; that the assessment diagnosed ED as being a sexually abused child; that, often, symptoms of trauma from sexual abuse and symptoms of attention deficit hyperactivity disorder ("ADHD") overlap; and, that a diagnosis of sexual abuse and the elimination of ADHD as a potential diagnosis have not yet been confirmed *Page 6 
because ED did not attend all three of the assessment sessions that are conducted before confirming a diagnosis.
 {¶ 7} Schweitzer-Dunn further testified that, on another visit for treatment, ED was again hesitant to speak with her alone, so Danielle came into the room; that it is not at all unusual for a child of her age to be tentative in engaging in these sessions without a parent, especially when the child is expected to talk about difficult subjects; that Scott contacted her, inquiring whether she was providing counseling to ED and stating that he had not done anything inappropriate; and, that, based upon the sexual touching ED described, she believed that ED had an understanding of the act of sex and of the difference between a sexual and non-sexual touch.
 {¶ 8} Kathy Elliot, a social services worker with Hancock County Children Services, testified that she was assigned to investigate ED's allegations of sexual abuse; that she scheduled an interview with ED and had a detective sit in an observation area to watch the interview; that the only people in the interview room were ED and herself, and, based upon her answers, she did not show signs of being coached; that there are three dispositions available for her to make after an investigation: substantiated, unsubstantiated, and indicated; that unsubstantiated means there is no evidence to support the allegation, substantiated means there is evidence and a confession to support the allegation, and indicated means there is *Page 7 
no confession or physical evidence to prove the allegation, but there is a strong belief that it did happen; and, that her disposition of this case was indicated.
 {¶ 9} On cross-examination, Elliot testified that ED told her that her father would lay on top of her, with one leg under her body and the other leg over her body; that ED never indicated that the "humping" by her father actually involved his private area touching her private area; that ED further told her that "if a boy tries to kiss her it's gross * * * but it's okay for a girl to kiss her," and that "a boy shouldn't kiss a girl even if they're a child" (July 2008 adjudication hearing tr., p. 95); that ED further told her that her father placed his hand or finger inside her pants on the outside of her underwear, but that he never touched her vagina; that ED stated that her father tried to put his hand down her shirt, but that his hand never touched her breasts because she pulled his hand out and told him to stop; that Danielle stated there were times where ED visited with her father without her sister present; and, that she also spoke with EL and AL and found no indication that Scott had inappropriate contact with them.
 {¶ 10} Elliot further testified that she tested ED's credibility by asking her about the facts multiple times, but in different ways, and that she was able to consistently maintain her story; that, in regards to ED's specific allegations, ED stated that Scott would lay on top of her and move his body up and down, and that this touching made her uncomfortable; and, that ED told her that when these *Page 8 
incidents took place, her father would wear long underwear that she could see through.
 {¶ 11} At the close of CPSU's case-in-chief, Scott made a motion to dismiss all cases on the grounds that the evidence failed to establish that he engaged in sexual contact with ED, or that he engaged in inappropriate behavior with the other two children. The trial court then denied in part, and granted in part, Scott's motion, finding that CPSU submitted sufficient evidence to support a finding that ED was abused and dependent, and that the other children were dependent, but that insufficient evidence was presented to establish that ED was neglected.
 {¶ 12} Subsequently, Scott attempted to call two witnesses to testify, his pastor, Walt Shephard, and another church member, Darcie Adams. CPSU objected to both witnesses, arguing that their names had not been disclosed during discovery, and, as a consequence, that they should be barred from testifying pursuant to Juv. R. 24. Scott argued that he had not planned to call the witnesses until the testimonies of Schweitzer-Dunn and Elliot disclosed ED's claim that the sexual abuse occurred while she was visiting her father without her sister present. Scott proffered the testimony of both witnesses, explaining that they would testify that every time he attends church, all three of his children are present with him, thereby establishing that all three children always visit him at the same time and attacking the accuracy of ED's sexual abuse claim. Subsequently, the trial court *Page 9 
ruled that Scott's failure to disclose the witnesses to CPSU was a violation of Juv. R. 24 and excluded them from testifying.
 {¶ 13} Scott then testified that there was never an occasion where ED would visit him without AL present; that he has kissed ED, but never with an open mouth; that he does not wear long underwear around the children, but only sweatpants; that he has never attempted to put his hand down ED's shirt to touch her breasts; that he has never attempted to place his hand or any portion of his hand inside ED's pants or to touch her vagina; that he has never attempted to touch her buttocks; that he has never climbed on top of, or moved close to, ED and rubbed himself on her in a sexual way; and, that he has never told ED not to tell anyone that he hugged, kissed, or touched her.
 {¶ 14} Scott continued that the visitation order from the trial court permits him to have the children every other weekend, but that he only had the children ten times in 2007 because Danielle would not permit him to see the children; that he filed a motion in November 2007 to modify his child support, but that he did not file a motion for the court to enforce the terms of the visitation at that time; that every time he had the children on a weekend, he took them to church on Sunday; that he first learned of ED's allegation when he was contacted by a police officer, and that Danielle never contacted him regarding the allegation; and, that he has no idea why ED would make up these allegations. *Page 10 
 {¶ 15} Subsequently, the trial court found ED to be an abused and dependent child, and found the other three children, ZA, AL, and EL to be dependent children. In reaching its conclusion, the trial court stated the following from the bench:
 Well, I think the key question was asked of Mr. Freed, and it was — the whole case is based on is, you know, why would [ED] lie. * * * And it would appear that the experts that questioned [ED] used all the techniques known to modern science on testing credibility. They examined her outside the presence of her mother, went over the story time and time again to see if she maintained consistency. She did. She passed all the tests of credibility. I don't see any likelihood here, and, of course, that's always one of the things you worry about is, you know, with the parties that are going through a divorce, did one of the parties put the child up to it or plant the story with the child in order to reap revenge on the other party. I see no evidence of that whatsoever here.
 * * *
 [Scott] brought out some inconsistencies and there apparently was inconsistency regarding the story about whether everybody was present or not and who was there and who was not there, but that to me is not enough to destroy the credibility of the child's story, so I find by clear and convincing evidence and the Court so finds * * * by clear and convincing evidence that [ED] is, in fact, abused and dependent as alleged in the complaint, and as a result of that finding, will find the other children to be dependent.
(Id. pp. 187-188).
 {¶ 16} Also in July 2008, Annie Fisher, the guardian ad litem ["GAL"] for the children, filed a dispositional report recommending Scott be granted supervised visitation with the children, including ED. *Page 11 
 {¶ 17} In August 2008, Scott filed a motion for supervised visits, requesting that he be granted supervised visitation rights with all of his children.
 {¶ 18} Subsequently, the trial court held a dispositional hearing. At the hearing, CPSU submitted into evidence a letter prepared by Schweitzer-Dunn, who was then serving as the therapist for EL, ED, and AL. The letter recommended more time elapse before Scott is granted visitation rights, as the children have continued to express fear and anger towards his actions.
 {¶ 19} Also at the hearing, Scott called the GAL to the stand, but she requested a continuance of the hearing, as she had been unable to find counsel to represent her and was uncomfortable with proceeding without counsel. Consequently, the trial court issued a disposition, granting custody of all the children to Danielle with protective supervision, ordering that Scott's visitation rights be granted only upon the recommendation of the Family Resource Center therapist, and granting the parties leave to file a motion to modify the disposition, thereby giving Scott the opportunity to present evidence once the GAL obtained an attorney.
 {¶ 20} Subsequently, Scott filed a timely notice of appeal, and no parties filed a motion to modify the trial court's disposition.
 {¶ 21} It is from these judgments that Scott appeals, presenting the following assignments of error for our review. *Page 12 
 Assignment of Error No. I THE TRIAL COURT'S DECISION THAT THE MINOR CHILD, [ED] WAS AN ABUSED AND DEPENDENT CHILD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. II THE TRIAL COURT'S DECISION THAT THE MINOR CHILDREN WERE DEPENDENT CHILDREN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. III THE TRIAL COURT ERRED AS A RESULT OF ITS REFUSAL TO PERMIT THE APPELLANT TO CALL WITNESSES IN HIS DEFENSE.
 Assignment of Error No. IV THE TRIAL COURT ERRED AS A RESULT OF ITS DENIAL OF ANY PARENTING TIME BETWEEN APPELLANT AND HIS MINOR CHILDREN.
 {¶ 22} Due to the nature of Scott's arguments, we elect to address assignments of error one and two together.
 Assignments of Error Nos. I and II {¶ 23} In his first assignment of error, Scott contends that the trial court's adjudication of ED as an abused and dependent child was against the manifest weight of the evidence. Specifically, Scott contends that the evidence presented by CPSU failed to establish that ED suffered a physical or mental injury, a requirement for a finding of abuse under R.C. 2151.031(D), or that he had sexual *Page 13 
contact with ED. Furthermore, Scott contends that the trial court erred by allowing two witnesses to testify to ED's out-of-court statements without first making a preliminary determination of ED's competency as a witness.
 {¶ 24} In his second assignment of error, Scott argues that the trial court's finding that the other children were dependent was also against the manifest weight of the evidence. Specifically, Scott asserts that the other children could not have been adjudicated dependent because the basis of that adjudication was found in R.C. 2151.04(D), requiring that the other children reside in the home of a parent who has committed an act to form the basis of an adjudication that another child who resides in the home is abused or dependent, and none of his other three children reside in his home, and insufficient evidence was presented to find ED was an abused and dependent child.
 A. Manifest Weight of the Evidence {¶ 25} "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct." State v.Wilson, 113 Ohio St.3d 382, 387, 2007-Ohio-2202, citing Seasons CoalCo., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C. E. Morris Co.v. Foley Const. Co. (1978), 54 Ohio St.2d 279, 280. Mere disagreement over the credibility of *Page 14 
witnesses or evidence is not sufficient reason to reverse a judgment.Wilson, 113 Ohio St.3d at 387.
 {¶ 26} A trial court's adjudication of a child as abused or dependent must be supported by clear and convincing evidence. R.C. 2151.35(A)(1); Juv. R. 29(E)(4); In re Myers, 3d Dist. No. 13-06-48, 2007-Ohio-1631, ¶ 11. Clear and convincing evidence is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate ofHaynes (1986), 25 Ohio St.3d 101, 104. Furthermore, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross v. Ledford (1954), 161 Ohio St. 469, 477, citingFord v. Osborne (1887), 45 Ohio St. 1; Cole v. McClure (1913),88 Ohio St. 1; and Frate v. Rimenik (1926), 115 Ohio St. 11. Thus, we are required to determine whether the trial court's determination was supported by sufficient credible evidence to satisfy the requisite degree of proof. In re McCann, 12th Dist. No. CA2003-02-017,2004-Ohio-283, ¶ 12, citing In re Starkey, 150 Ohio App.3d 612, 617,2002-Ohio-6892.
 {¶ 27} R.C. 2151.031 defines an abused child as one who: *Page 15 
 (A) Is the victim of "sexual activity" as defined under Chapter 2907. of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child;
 (B) Is endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child;
 * * *
 (D) Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare.
 {¶ 28} Sexual activity is defined in R.C. 2907.01(C) as either sexual conduct, sexual contact, or both. Sexual conduct is defined, in part, as:
 {¶ 29} [T]he insertion, however slight, of any part of the body or anyinstrument, apparatus, or other object into the vaginal or anal openingof another. Penetration, however slight, is sufficient to completevaginal or anal intercourse.
R.C. 2907.01(A).
 {¶ 30} Sexual contact is defined as:
 [A]ny touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
R.C. 2907.01(B).
 {¶ 31} Furthermore, R.C. 2919.22(A) defines endangering a child as creating "a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." *Page 16 
 {¶ 32} R.C. 2151.04 sets forth the definitions of a dependent child as follows:
 As used in this chapter, "dependent child" means any child:
 * * *
 (B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;
 (C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
 (D) To whom both of the following apply:
 (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.
 1. Adjudication of ED as an abused and dependent child {¶ 33} In the case at bar, Scott argues that the manifest weight of the evidence does not support a finding that ED is a dependent child, and that ED should not have been adjudicated an abused child because there was no evidence that she suffered from a physical or mental injury, as required under *Page 17 
R.C. 2151.031(D), or that actual sexual contact took place, as required under R.C. 2151.031(A).
 {¶ 34} However, the trial court's finding that ED was an abused child was also based upon R.C. 2151.031(B), that the child is endangered. At trial, evidence was presented that Scott attempted to touch ED's vagina and breasts; that he "humps" her; that he would lay on top of her and move his body up and down; that he took baths with her until she was five years old; and, that he would sleep in the same bed with her while she was in her underwear. Additionally, two witnesses testified that it did not appear that ED had been coached to make these allegations, or that she was lying about the allegations, as she was able to give the same story with sufficient detail on multiple occasions.
 {¶ 35} On the other hand, Scott's only evidence was his own testimony that these events did not occur, and that ED's story of the events could not have been true, as she alleged that the acts occurred while she was at his house without her sister, and there was never an occasion where he did not have visitation with all the children at one time. However, we note that the trial court could have discounted Scott's testimony as self-serving and untrustworthy, as the weight to be given to the credibility of witnesses is primarily reserved to the trier of fact, and presents this Court with an insufficient basis to reverse a judgment.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; Wilson, 113 Ohio St.3d at 387. *Page 18 
 {¶ 36} Accordingly, we find that the weight of the evidence supported a finding that Scott's behavior presented a substantial risk to the health and safety of ED, thereby substantiating the adjudication that she was an abused child pursuant to R.C. 2151.031(B); that the testimony describing the details of Scott "humping" ED was sufficient to establish sexual contact, also supporting an adjudication that she was an abused child under R.C. 2151.031(A); and, that the clear and convincing evidence of Scott's actions supported a finding that ED lacked adequate parental care and that her environment warranted the State to be involved in her guardianship, thereby sustaining the determination that ED was dependent pursuant to R.C. 2151.04(B) and (C).
 2. Adjudication of the other children as dependent {¶ 37} Additionally, Scott asserts that the other children could not have been adjudicated dependent under R.C. 2151.04(D), as that determination requires a finding that the other children reside with him and that ED is dependent, both of which he claims were not proven by clear and convincing evidence.
 {¶ 38} Again, however, the trial court also found the other children to be dependent under R.C. 2151.04(B) and (C). Based on the evidence presented that Scott had sexual contact with ED, it is clear the trial court's adjudication of the other children as dependent pursuant to R.C. 2151.04(B) and (C), finding that they lacked adequate parental care and that their environment warranted the State's involvement in their guardianship, was supported by clear and convincing *Page 19 
evidence. Consequently, we find the trial court's determination that the other children were dependent was not against the manifest weight of the evidence.
 B. ED's competency as a witness {¶ 39} Scott also argues that the trial court erred in permitting Schweitzer-Dunn and Elliot to testify to out-of-court statements made by ED without first making a determination as to whether ED was competent to provide such testimony herself under Evid. R. 601.
 {¶ 40} We first note that Elliot did not testify to the details of ED's statements until Scott elicited them on cross-examination. Secondly, although Scott objected to Schweitzer-Dunn's testimony regarding the statements made by ED contained in the diagnostic assessment prepared by Alyssa Roach, Scott's objection was that the statements were double hearsay, and, after being provided with a copy of the report, Scott did not further pursue his objection. At no point did he object to ED's competency as a witness. Accordingly, Scott has waived all but plain error on this issue. See State v. Stiles, 3d Dist. No. 1-08-12, 2009-Ohio-89, ¶ 42.
 {¶ 41} However, because the statements made by ED to Schweitzer-Dunn in her capacity as a therapist were for purposes of medical diagnosis or treatment, the trial court was not required to conduct a competency evaluation of ED before admitting the statements. See State v.Muttart, 116 Ohio St.3d 5, 14, 2007-Ohio-5267, ("[R]egardless of whether a child less than ten years old has been *Page 20 
determined to be competent to testify pursuant to Evid. R. 601, the child's statements may be admitted at trial as an exception to the hearsay rule pursuant to Evid. R. 803(4) if they were made for purposes of medical diagnosis or treatment")[1].
 {¶ 42} As to the statements made by ED to Elliot in her capacity as a social worker, these statements may not have been made for purposes of medical diagnosis or treatment, but they were wholly elicited by Scott on cross-examination, thereby inviting the error, and, consequently, waving it.
 {¶ 43} Therefore, we find that the trial court did not err in admitting ED's statements regarding the sexual abuse through the testimony of her therapist and social worker without first requiring ED to submit to a competency evaluation pursuant to Evid. R. 601.
 {¶ 44} Accordingly, we overrule Scott's first and second assignments of error.
 Assignment of Error No. III {¶ 45} In his third assignment of error, Scott argues that the trial court erred in refusing to allow him to call witnesses in his defense. Specifically, he contends that he should have been permitted to call two witnesses whom he did not disclose *Page 21 
in discovery because the need for the witnesses did not arise until CPSU presented its case.
 {¶ 46} An appellate court reviews a trial court's decision regarding disposition of discovery issues for abuse of discretion. Portman v.Mabe, 3d Dist. No. 15-07-12, 2008-Ohio-3508, ¶ 13, citing State ex rel.The V. Cos. v. Marshall, 81 Ohio St.3d 467, 469, 1998-Ohio-329. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 47} Juv. R. 24 governs discovery in child abuse, neglect, and dependency proceedings. It provides, in relevant part:
 (A) Request for discovery
 Upon written request, each party of whom discovery is requested shall, to the extent not privileged, produce promptly for inspection, copying, or photographing the following information, documents, and material in that party's custody, control, or possession:
 (1) The names and last known addresses of each witness to the occurrence that forms the basis of the charge or defense;
 (2) Copies of any written statements made by any party or witness;
 (3) Transcriptions, recordings, and summaries of any oral statements of any party or witness, except the work product of counsel; *Page 22 
 * * *
 (C) Failure to comply
 If at any time during the course of the proceedings it is brought to the attention of the court that a person has failed to comply with an order issued pursuant to this rule, the court may grant a continuance, prohibit the person from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.
 {¶ 48} In this case, Scott attempted to call two witnesses, Walt Shephard, the pastor of the church he attends, and Darcie Adams, a church member. Scott proffered the testimony of both witnesses, stating that Adams would testify that, according to church attendance records, all three of his children are present with him when he attends church, and that Shephard would testify from his personal recollection that all three of Scott's children attend church with him. Scott asserted that he had not disclosed the witnesses because he did not plan on calling them, but, when CPSU presented ED's statements that the abuse occurs when she is at his house without her sister, he then saw the need to present testimony to establish that ED does not attend visits to his house without the other children present.
 {¶ 49} However, the trial court noted, and Scott recognized, that he had been provided with a videotape of ED's statements prior to trial, and, as such, he should have been fully aware of any need to present witnesses to discredit ED's statements. *Page 23 
 {¶ 50} Furthermore, we note that denying Scott the ability to present this testimony has little, if any, prejudicial effect upon his defense. Even if both witnesses were permitted to testify, their testimony would have limited persuasive value; just because all three children were present with Scott at church does not affirmatively establish that ED could not have visited Scott's home at a time when her sister was not present.
 {¶ 51} Consequently, we find that the trial court did not abuse its discretion in refusing Scott the opportunity to present the testimony of Adams and Shephard.
 {¶ 52} Accordingly, we overrule Scott's third assignment of error.
 Assignment of Error No. IV {¶ 53} In his fourth assignment of error, Scott asserts that the trial court erred by denying him parenting time with his children. Specifically, Scott contends that the trial court abused its discretion by denying him parenting time based solely upon the written recommendation of Schweitzer-Dunn and the hearsay statements contained therein without the presentation of any other testimony. We disagree.
 {¶ 54} A trial court's decision regarding disposition of a child will be upheld absent a finding of abuse of discretion, as set forth in our discussion of Scott's third assignment of error. In re Utz, 3d Dist. No. 3-2000-06, 2000-Ohio-1710, citing In re Ward (1992) 75 Ohio App.3d 377,379. *Page 24 
 {¶ 55} R.C. 2151.353 grants the trial court an array of dispositions when a child has been found abused, neglected or dependent. It provides, in pertinent part:
 A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 * * *
 6) Order the removal from the child's home until further order of the court of the person who committed abuse as described in section 2151.031 of the Revised Code against the child, who caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, or who is the parent, guardian, or custodian of a child who is adjudicated a dependent child and order any person not to have contact with the child or the child's siblings.
(Emphasis added.) R.C. 2151.353(A)(6).
 {¶ 56} Furthermore, Juv. R. 34(E) provides:
 If the court issues an order for protective supervision, the court may place any reasonable restrictions upon the child, the child's parents, guardian, or any other person * * *.
 {¶ 57} In determining appropriate restrictions at a disposition hearing, the trial court may consider all material and relevant evidence, including hearsay evidence. Juv. R. 34(B)(2); In re SeanT, 6th Dist. Nos. H-04-009, H-04-010, 2005-Ohio-5739, ¶ 32.
 {¶ 58} At the dispositional hearing, CPSU submitted a letter from Schweitzer-Dunn, recommending additional time before Scott is permitted *Page 25 
parenting time with the children, in part due to the statements made by the children that they are mad at their father and scared of him. While the letter may have contained hearsay statements of the children, the trial court had full authority under Juv. R. 34 to consider the contents of the letter in making its determination.
 {¶ 59} Additionally, Scott presented no evidence demonstrating that he should be permitted parenting time with the children. He attempted to present the GAL's recommendation that he be granted parenting time, but the trial court granted her request to continue her testimony until she could obtain counsel. As a consequence, the trial court filed the disposition judgment entry but granted the parties leave to file a motion to modify the disposition, thereby giving the GAL an opportunity to obtain counsel and giving Scott the opportunity to call her back to testify. However, Scott filed a notice of appeal to the decision and never filed a motion to modify the disposition, thereby depriving himself of the opportunity to present the GAL's testimony.
 {¶ 60} Furthermore, the trial court did not deny Scott parenting time with his children, but left the decision of parenting time to the discretion of Family Resource Center's therapist. However, based upon the trial court's adjudication of ED as abused and dependent due to Scott's abuse of the child, the trial court's adjudication of the other children as dependent, and the recommendation of Schweitzer-Dunn that Scott's parenting time be postponed, we find that the trial *Page 26 
court was well within its discretion under R.C. 2151.353(A)(6) and Juv. R. 34(E) to order Scott's parenting time to be at the discretion of the therapist.
 {¶ 61} Accordingly, we overrule Scott's fourth assignment of error.
 {¶ 62} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments Affirmed
 WILLAMOWSKI and SHAW, J.J., concur.
[1] This author questions whether statements made to a psychologist that do not concern treatment of physical ailments fall under the Evid. R. 803(4) exception to the hearsay rule, as the Rule was originally clearly directed to medical treatment or diagnosis for physical ailments. See Evid. R. 803(4) and Staff note: Rule 803. As Schweitzer-Dunn was a therapist, she could not have been providingmedical treatment or diagnosis. *Page 1