[Cite as *In re A.V.*, 2022-Ohio-1061.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|                                    |     |              |
| ---------------------------------- | --- | ------------ |
| IN RE A.V.                         | :   |              |
|                                    | :   | No. 110344   |
| A Minor Child                      | :   |              |
|                                    | :   |              |
| [Appeal by B.V., Mother]           | :   |              |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 31, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD19910956

*Appearances:*

John H. Lawson, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorneys, for *appellee* CCDCFS.

Michael B. Telep, *for appellee* J.T.

MARY EILEEN KILBANE, J.:

{¶ 1} Appellant B.V. ("Mother") appeals from the juvenile court's decision awarding legal custody of her minor child, A.V., to appellee J.T. ("Father"). For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On September 10, 2019, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") filed a complaint alleging that minor child A.V., then 16 months old, was neglected and seeking temporary custody of A.V.[1] The agency simultaneously filed a motion for emergency predispositional custody of the child. The complaint alleged that on or about August 24, 2019, Mother was involved in an automobile accident wherein she struck multiple parked cars while A.V. was in the car with her. Following the accident, Mother was observed to be in an altered mental state and subsequently tested positive for prescription medications.

{¶ 3} The complaint also alleged that on or about February 18, 2019, A.V. was diagnosed with failure to thrive. The complaint went on to allege that since the diagnosis, Mother has not consistently followed through with A.V.'s medical appointments or been consistent in treating A.V.'s medical needs. The complaint went on to allege that Mother's mental health disorders interfered with her ability to care for A.V.

{¶ 4} Finally, the complaint alleged that Mother's older child was in the legal custody of the child's maternal grandmother. The complaint named J.T. as

---

[1] CCDCFS had previously filed a complaint alleging neglect and seeking protective supervision of A.V. on June 14, 2019, in Cuyahoga J.C. No. AD19907498. Upon filing the complaint in the instant case on September 10, 2019, CCDCFS dismissed the June 14, 2019 complaint because it was not resolved within the relevant statutory timeframe.

A.V.'s alleged father and alleged that he has not established paternity and has failed to support, visit, or communicate with the child since birth.

{¶ 5} On December 3, 2019, following multiple continuances, Mother waived her right to have the matter heard within 90 days pursuant to R.C. 2151.35(B)(1). On February 6, 2020, the court granted the agency's motion for temporary custody. On July 27, 2020, Father filed a motion for legal custody.

{¶ 6} Mother and J.F. had previously been in a romantic relationship, and the agency had temporarily placed A.V. with J.F.'s parents. On October 19, 2020, counsel for J.F. filed a motion to intervene and a motion for legal custody. At the time he filed these motions, J.F. was residing with his parents and A.V.

{¶ 7} On October 20, 2020, the court held a hearing. The court granted the agency's oral motion for a first extension of temporary custody. The court also held J.F.'s October 19 motions in abeyance, finding that they had not been properly served on all parties. On October 29, 2020, J.F. filed a motion for an immediate restraining order preventing the agency from removing A.V. from her current placement. J.F. also refiled his motion to intervene and motion for legal custody.

{¶ 8} On November 30, 2020, the agency filed a brief in opposition to J.F.'s motion to intervene.

{¶ 9} On December 10, 2020, the court held a hearing on J.F.'s pending motions. The court reconvened for a continuation of that hearing on December 14, 2020. The court began by stating that, with respect to J.F.'s motion to intervene, it had previously heard testimony, considered the parties' arguments, and took the

matter under advisement. The court found that the motion to intervene had not been proven under Juv.R. 2(Y); J.F. was not a party to the case and did not have a permissive right to intervene under Civ.R. 24(A) and/or (B). Based on these findings, the court denied J.F.'s motion to intervene. The court likewise denied J.F.'s motion for an immediate restraining order on the basis that J.F. lacked standing to file this motion.

{¶ 10} The court then proceeded to a hearing on the competing motions for legal custody filed by J.F.[2] and Father. Father testified that he had a brief romantic relationship with Mother beginning in July 2017 and lasting until September or October 2017. Father testified that he learned that Mother became pregnant, but he was not sure if she would decide to carry the pregnancy to term. Father testified that he had reached out to Mother periodically since October 2017 but did not receive any response and believed that she had terminated the pregnancy. Father further testified that he did not know that A.V. was born in April 2018 until he received correspondence related to the agency's motion for emergency custody in September or October 2019.

{¶ 11} Father began spending time with A.V. in February 2020 through supervised visits. In March 2020, genetic testing confirmed Father's paternity of A.V. Father testified that since then, he took steps to continue to establish a

---

[2] At the outset of the December 14, 2020 hearing, the court stated that although J.F. was not permitted to intervene as a party, the court would still consider his motion for legal custody and J.F. would be permitted to provide testimony to support his motion if he chose to do so.

relationship with A.V. by regularly spending time together. At the time of the hearing, Father testified that A.V. had been spending weekends with him.

{¶ 12} Father testified that he participated in a pain management program through MetroHealth for acute back pain. As part of that program, Father was prescribed medication and had a medical marijuana card. Father testified that he was a recovering drug addict, but beyond a prescribed amount of marijuana, he did not use any other drugs and did not drink alcohol. Father testified that he received regular income through construction work as an independent contractor. He also testified that he would be able to make childcare arrangements with his family and with a daycare several blocks from his house if he were to receive legal custody of A.V.

{¶ 13} CCDCFS social worker Jamila Baugh ("Baugh") also testified at the December 14, 2020 hearing. Baugh testified that she had been involved with the case since 2018. Baugh testified that Father's case plan goals were to establish paternity, build a relationship with A.V., and complete substance abuse assessments or treatment as needed. Baugh testified that Father had established paternity and begun to establish a relationship with A.V. Baugh testified that Father was cautious during his first visit with A.V., but otherwise their visits have been positive and appropriate, and he was continuing to build a relationship with A.V. Baugh testified that she had the opportunity to investigate Father's home and, as a result of her observations, she believed that he had appropriate accommodations for A.V.

{¶ 14} On January 19, 2021, the court reconvened for a continuation of the hearing on Father's and J.F.'s competing motions for legal custody. At the outset of the hearing, the court addressed Father's counsel and the following exchange took place:

> THE COURT: I know you called witnesses at the last hearing in support of your motion. Do you have any further witnesses at this time?
>
> FATHER'S COUNSEL: Yes. I would like to call on the Mother, [B.V.].
>
> THE COURT: This is on the abuse, neglect, dependency case. She does have the right to remain silent. [Counsel for Mother,] is your client waiving that right?
>
> MOTHER'S COUNSEL: No, your Honor.

Unable to call Mother as a witness, Father called the GAL to testify.

{¶ 15} The GAL testified that although she had not filed a report and recommendation since the last hearing, she had recently visited Father's home and deemed it appropriate for A.V. The GAL also testified that it was clear that A.V. "felt very safe and comfortable in [Father's] presence" and that she had no concerns about A.V.'s safety at Father's home.

{¶ 16} The GAL also testified that she had met J.F. when she visited his parents' home as part of her investigation prior to the emergency grant of temporary custody. The GAL confirmed that A.V. was currently placed in that home and that she had no safety concerns about that residence. She testified that she was able to witness A.V. and J.F. interact and that "she does have a bond with him because he

is a part of the household she's living in." During cross-examination of the GAL, the following exchange took place:

> J.F.'s COUNSEL: Have you had any conversations with the mother regarding the child's bond with [J.F.]?
>
> GAL: Yes.
>
> J.F.'s COUNSEL: And would you agree that she believes that it is in the child's best interest to maintain that bond with [J.F.]?
>
> FATHER'S COUNSEL: Objection, your Honor.
>
> THE COURT: Basis to the objection?
>
> FATHER'S COUNSEL: If the mother wants to testify, she can testify. She's waiving her right to testify. [The GAL] can't say what the mother's intentions are.
>
> THE COURT: Sustained. Your next question?

{¶ 17} Baugh then testified. Baugh's testimony largely mirrored her testimony at the December 14, 2020 hearing. Baugh also testified that when Father informed the agency that he smoked marijuana, both Mother and Father were ordered to submit to drug testing. Baugh testified that Father submitted to these screens and they were positive for marijuana. She went on to testify that she learned that Father was using marijuana as prescribed by his doctor and that she had no reason to believe that A.V. was not in a safe environment with Father.

{¶ 18} Following Baugh's testimony, Father's counsel informed the court that it had no additional witnesses. The court then asked the agency attorney and Mother's counsel if they had any witnesses, and both stated that they did not. The

court then directed J.F.'s counsel to call the first witness in support of J.F.'s motion for legal custody.

{¶ 19} J.F. testified that he had been in A.V.'s life since birth and that the bond they shared was "that of a father and daughter." J.F. testified that he spoke to Mother regularly and it was his understanding that Mother wanted A.V. to remain with him.

{¶ 20} J.F. then called J.S., Mother's mother, to testify in support of his motion for legal custody. J.S. testified that she had no concerns about J.F.'s ability to care for A.V. J.S. testified that she did not know Father, but she was aware of his prior relationship with Mother and believed that it was not a good relationship. J.S. testified that she had not had contact with her daughter in approximately nine months. She described that as typical for their relationship and testified that Mother had struggled with mental health and substance abuse issues throughout her life.

{¶ 21} At the conclusion of the hearing, following closing arguments from Father's counsel, the following exchange took place:

> MOTHER'S COUNSEL: I did file a motion for legal custody to [J.F.] I realize that it wasn't timely, but I do have a witness if in fact the Court would allow it.
>
> FATHER'S COUNSEL: Well, I'm gonna object to that, Your Honor.
>
> COURT: [Mother's Counsel], I asked you if you had any witnesses as it related to either of these motions and you said no. The motion that was —
>
> MOTHER'S COUNSEL: I thought you were asking me about one certain witness. I'm sorry.

COURT: The motion that was handed to this Court was not timestamped. I don't even know if it was filed and it was handed probably 10 or 15 minutes before this hearing was even —

MOTHER'S COUNSEL: Right. I filed it today, yeah.[3]

COURT: So at this point if there's an objection, I'm going to deny — I'm not going to allow the witness to testify. You had the opportunity to call this person.

MOTHER'S COUNSEL: Well, I wanted to call [Mother], but —

COURT: Is there an objection, [Father's Counsel]?

FATHER'S COUNSEL: Objection to calling [Mother] when she has not shown any interest in getting legal custody for herself? Yes, there's an objection.

COURT: She's had the opportunity to testify. [CCDCFS attorney], do you have an objection?

CCDCFS: Yes, we have an objection as well.

COURT: [GAL]?

GAL: Your Honor, at this point I would object.

COURT: I'm not going to allow it at this point in time. Like I said, these motions have been pending. [Father's] motion has been pending since July. [J.F.'s] motion has been pending since the fall of last year. This is our second day of trial and I've given everyone the opportunity to call witnesses and she's had the opportunity to testify.

MOTHER'S COUNSEL: Okay. Thank you, Your Honor.

The court then heard closing arguments from the agency attorney, Mother's counsel, and J.F.'s counsel, and the hearing concluded.

---

[3] Our review of the record shows that Mother did not file a motion for legal custody on January 19, 2021.

**{¶ 22}** On January 25, 2021, the magistrate issued a decision granting Father's motion for legal custody and denying J.F.'s motion for legal custody. On February 4, 2021, J.F. filed objections to the magistrate's decision. On February 5, 2021, Mother filed objections to the magistrate's decision. On February 10, 2021, the court adopted the magistrate's decision without ruling on Mother's or J.F.'s objections. The court made the following findings, in relevant part:

> The Court finds that there has been significant progress on the case plan by Father and progress has been made in alleviating the cause for the removal of the child from the home.
>
> The continued Temporary Custody of the child is not necessary and is not in the child's best interest.
>
> The custody plan for the child is Termination of Temporary Custody and Legal Custody to [Father], with an Order of Protective Supervision to Cuyahoga County Division of Children and Family Services.
>
> [Father] has established paternity. He visits with the child on a weekly basis, unsupervised from Thursday through Sunday. The visits have occurred without incident. Ms. Baugh testified that there is a bond between the father and child. [Father] has maintained his sobriety, engaging in mental health treatment and establishing housing.
>
> [Mother] has not completed case plan objectives, including completing substance abuse treatment, maintaining her sobriety, engaging in mental health treatment and establishing housing.
>
> [J.F.] is the son of the child's foster parents. He was previously involved in a relationship with the child's mother. Prior to [Father] learning that he was the child's biological father, the child's mother allegedly offered [J.F.] the opportunity to serve the role of the child's father. He is not the child's parent.

On February 16, 2021, the agency filed a brief in opposition to Mother's and J.F.'s objections.

**{¶ 23}** On March 2, 2021, Mother filed a notice of appeal. On June 23, 2021, this court sua sponte remanded the case, issuing the following journal entry:

> Sua sponte, to resolve the appearance of any jurisdictional impediment, the case is remanded to the trial court, pursuant to App.R. 4(B) and App.R. 9(E), to enter judgment on any timely filed objections to the magistrate's decision. The record transmitted to this court indicates that objections were timely filed. The trial court, pursuant to Juv.R. 40(C)(4)(e)(ii), adopted the magistrate's decision prior to the extended time for filing objections had passed. Therefore, the judgment did not address the objections. However, a notice of appeal was then filed, depriving the trial court of jurisdiction to take further action in the case except in aid of the appeal. *See In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207. The briefing of the parties indicates that the trial court ruled on those objections after the notice of appeal was filed. The record before this court does not contain those rulings. To ensure it has the jurisdiction to do so, the trial court shall re-enter judgment on any objections during the remand.

On July 20, 2021, the juvenile court overruled the objections to the magistrate's decision, and the case was returned to this court with the supplemental record on July 26, 2021.

**{¶ 24}** Mother presents two assignments of error for our review:

> I. The trial court erred and abused its discretion by denying Appellant's legal counsel's request to call Appellant B.V. as a witness.

> II. The trial court erred and abused its discretion by ruling that Appellant had a general "right to remain silent" in a civil case.

Law and Analysis

**{¶ 25}** In Mother's first assignment of error, she argues that the trial court erred and abused its discretion by denying Mother's counsel's request to call Mother as a witness. In Mother's second assignment of error, she argues that the trial court

erred and abused its discretion by ruling that she had a general right to remain silent in a civil case.

{¶ 26} "'A trial court has broad discretion in the admission or exclusion of evidence,'" and therefore its judgment will not be reversed absent a clear showing of an abuse of discretion. *In re M.E.G.*, 10th Dist. Franklin Nos. 06AP-1256, 06AP-1257, 06AP-1258, 06AP-1259, 06AP-1263, 06AP-1264, 06AP-1265, 2007-Ohio-4308, ¶ 23, quoting *State v. Rowe*, 92 Ohio App.3d 652, 665, 637 N.E.2d 29 (10th Dist.1993). The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 27} Both of Mother's assignments of error deal with the trial court's exclusion of evidence in the form of Mother's testimony, either by permitting Mother to invoke her Fifth Amendment right and refuse to testify when Father attempted to call her as a witness or by declining to allow Mother's counsel to call her as a witness. Therefore, we will review both assignments of error for abuse of discretion.

{¶ 28} In Mother's first assignment of error, Mother argues that the trial court erred and abused its discretion when it denied Mother's counsel's request to call Mother as a witness. In support of this assignment of error, Mother argues that as A.V.'s mother, she should have been permitted to testify and "share her sentiments" as to the two competing custody motions filed by Father and J.F.

{¶ 29} Trial courts have broad discretion over their proceedings, including the admissibility of witness testimony. Evid.R. 611(A) provides that the trial court

> shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Additionally, Juv.R. 40(C)(2) provides that magistrates in juvenile court are authorized to regulate proceedings and to do everything necessary for the efficient performance of their responsibilities, including putting witnesses under oath and examining them. Juv.R. 40(C)(2)(c).

{¶ 30} We agree that Mother's testimony was critical to the outcome of the juvenile court proceedings in this case, and we acknowledge that it is unusual for a parent to participate in custody proceedings without testifying. We disagree, however, that the court abused its discretion when it denied her counsel's request to call Mother as a witness. In addition to when Father attempted to call Mother as a witness, discussed at length below, Mother's counsel was given the opportunity to call witnesses — Mother or presumably anyone else she deemed appropriate — and declined, stating that she had no witnesses to call. Specifically, at the January 19, 2021 hearing, the court asked Mother's counsel if she had "any witnesses," and Mother's counsel responded that she did not. At the conclusion of the hearing, when both Father and J.F. had rested and after Father's counsel had made his closing argument, Mother's counsel addressed the court. Mother's counsel referred to a motion for legal custody she had untimely filed that day and informed the court that

she had a witness "if in fact the Court would allow it."  The court reiterated that it had asked Mother's counsel if she had any witnesses related to either Father's or J.F.'s motions, and she did not.  According to Mother's counsel, she was confused, and "thought [the court] was asking [her] about one certain witness."

{¶ 31} Mother, citing a case in which the appellant's parental rights were terminated, argues that "a parent's right to testify must be balanced against the trial court's ability to manage its docket." *In re J.W.*, 1st Dist. Hamilton No. C-190189, 2019-Ohio-2730, ¶ 12, quoting *In re M/W Children*, 1st Dist. Hamilton No. C-180623, 2019-Ohio-948, ¶ 33.  We are mindful of Mother's interest in these proceedings, and we acknowledge that this interest stems from her fundamental liberty interest in the right to custody of her child.  *O'Malley v. O'Malley*, 8th Dist. Cuyahoga No. 98708, 2013-Ohio-5238, ¶ 15, citing *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).  Additionally, we acknowledge that pursuant to Juv.R. 2(Y), Mother is a party to the proceedings and as such "has a right 'to a reasonable opportunity to be present at trial.'"  *In re M/W Children* at ¶ 33, quoting *Brown v. Bowers*, 1st Dist. Hamilton No. C-070797, 2008-Ohio-4114, ¶ 15.  Because, however, Mother "had adequate opportunity to participate * * * yet opted not to do so," it was not unreasonable for the trial court to deny her belated request to testify.  *In re J.W.*, 1st Dist. Hamilton No. C-190189, 2019-Ohio-2730, ¶ 12.  Therefore, Mother's first assignment of error is overruled.

{¶ 32} Mother's second assignment of error argues that the trial court erred and abused its discretion by ruling that Mother had a general "right to remain silent"

when it prevented Father's counsel from calling Mother as a witness on the basis that her attorney informed the court that she was invoking her Fifth Amendment right to refrain from self-incrimination. We disagree.

{¶ 33} Our review here encompasses an analysis of the interaction among the trial court's authority to manage its proceedings, Father's right to present a full case in support of his motion for legal custody, and Mother's Fifth Amendment rights. With respect to the trial court's authority to manage its proceedings, Evid.R. 611(A) provides that the trial court

> shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Additionally, Juv.R. 40(C)(2) provides that magistrates in juvenile court are authorized to regulate proceedings and to do everything necessary for the efficient performance of their responsibilities, including putting witnesses under oath and examining them. Juv.R. 40(C)(2)(c).

{¶ 34} With respect to Father's right to present his case in support of his motion for legal custody, Ohio courts have long held that a parent's right to custody of their child is a fundamental liberty interest protected by due process, and therefore a court may not deprive a parent of their right to custody of their child without due process of law. *In re D.P., Jr.*, 8th Dist. Cuyahoga No. 110729, 2022-Ohio-135, ¶ 27. In the specific context of Father's right to call witnesses on his behalf:

An ability to testify on one's behalf and cross-examine the opposing party is particularly significant in custody hearings, as the dispute rarely leads to litigation unless the parents are in disagreement about what is in their child's best interest. * * * At a minimum, the trial court must give each parent the opportunity to testify and to cross-examine the other and, if it must place time limitations on their presentation of evidence, it must do so in a manner that is fair to both parties.

*Loewen v. Newsome*, 9th Dist. Summit Nos. 25559 and 25579, 2012-Ohio-566, ¶ 16. Although *Loewen v. Newsome* involved a domestic relations case rather than a juvenile case, the due process considerations are similar and therefore instructive.

{¶ 35} Finally, with respect to Mother's Fifth Amendment privilege against self-incrimination, Ohio courts have long held that the scope of the privilege against self-incrimination is comprehensive and can be claimed in civil and criminal proceedings, including a dependency action in juvenile court. *In re Billman*, 92 Ohio App.3d 279, 280, 634 N.E.2d 1050 (8th Dist.1993). While the privilege can apply in a variety of contexts, the nature and scope of the privilege varies based on the particular context:

In a criminal proceeding, the Fifth Amendment permits a criminal defendant to completely refuse to testify. By contrast, in a civil proceeding, the Fifth Amendment prohibits the state from compelling a witness to testify regarding a matter that "may tend to incriminate" the witness in a future criminal proceeding. "Compulsion, in this sense, arises whenever some penalty is imposed for failing to offer testimony."

*In re M.J.*, 11th Dist. Ashtabula No. 2011-A-0014, 2011-Ohio-2715, ¶ 72, quoting *In re Myers*, 3d Dist. Seneca No. 13-06-48, 2007-Ohio-1631, ¶ 32.

{¶ 36} Therefore, while the privilege may be invoked in a juvenile court proceeding, such invocation is not limitless:

> [I]n such an action, the right does not relieve a person of the obligations to either appear for a proceeding or respond to certain questions; rather, the right prohibits the state from compelling the witness to testify regarding matters that "may tend to incriminate" the witness in a future criminal proceeding.

*In re A.I.*, 8th Dist. Cuyahoga No. 99808, 2014-Ohio-2259, ¶ 42, quoting *In re Myers*, 3d Dist. Seneca No. 13-06-48, 2007-Ohio-1631, ¶ 32, citing *Tedeschi v. Grover*, 39 Ohio App.3d 109, 111, 529 N.E.2d 480 (10th Dist.1988). Further, while an individual may invoke their Fifth Amendment protection during a juvenile court proceeding, the protection does not permit the individual to completely refuse to testify. *Id.*, citing *In re Shrider*, 3d Dist. Wyandot Nos. 16-05-20 and 16-05-21, 2006-Ohio-2792, ¶ 34.

{¶ 37} Here, when Father attempted to call Mother as a witness, the trial court asked Mother's counsel if Mother was waiving her right to remain silent. Mother's counsel responded that she was not. The court, apparently satisfied with this response, effectively precluded Father from calling Mother as a witness, therefore allowing Mother to completely refuse to testify.

{¶ 38} "The doctrine of invited error holds that a litigant may not 'take advantage of an error which he himself invited or induced.'" *In re D.B.*, 8th Dist. Cuyahoga No. 102163, 2015-Ohio-4488, ¶ 15, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus. Although the trial court adopted an inappropriately broad interpretation of Mother's Fifth Amendment protection, this was directly predicated on Mother's purported invocation of her right. Therefore, pursuant to the invited-

error doctrine, we cannot reward her with a reversal of the trial court's judgment based on an error that she induced. For these reasons, Mother's second assignment of error is overruled.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., CONCURS;
LISA B. FORBES, J., DISSENTS (WITH SEPARATE OPINION)

LISA B. FORBES, J., DISSENTING:

{¶ 40} I respectfully dissent from the majority's opinion and would find that the juvenile court erred by misconstruing Mother's Fifth Amendment privilege against self-incrimination and effectively prohibiting her from testifying in this abuse, neglect, dependency case involving her daughter, A.V.

{¶ 41} The Fifth Amendment

not only protects [an] individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding,

civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).

{¶ 42} This court has previously held that "[w]hile the umbrella of Fifth Amendment guarantees is broad, the prohibition against compulsory testimony does not relieve a party from appearing or answering questions in a civil action." *Tedeschi v. Grover*, 39 Ohio App.3d 109, 111, 529 N.E.2d 480 (1988). In other words, the Fifth Amendment does not "prohibit civil litigation while the possibility of criminal prosecution exists." *Id.* at 110.

{¶ 43} In the case at hand, the following colloquy took place at the hearing on Father's motion for legal custody:

THE COURT: Do you have any further witnesses at this time?

FATHER'S COUNSEL: Yes. I would like to call on the mother, [B.V.].

THE COURT: This is on the abuse, neglect, dependency case. She does have the right to remain silent.

[Mother's counsel], is your client waiving that right?

MOTHER'S COUNSEL: No, your Honor.

THE COURT: Your next witness, [Father's counsel]?

FATHER'S COUNSEL: Okay. I guess I'll call the Guardian ad Litem.

{¶ 44} By not waiving her right to remain silent, Mother was not refusing to testify. Rather, she was protecting her Fifth Amendment privilege against self-incrimination should the situation arise that she needed to invoke the Fifth Amendment. However, the juvenile court proceeded as if Mother refused to testify.

{¶ 45} The United States Supreme Court has consistently recognized that "the relationship between parent and child is constitutionally protected." *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). "The liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). *See also Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.").

{¶ 46} I would find that the juvenile court violated Mother's fundamental right as a parent "to make decisions concerning the care, custody, and control of their children." *Troxel* at 66. Mother's voice was silenced, and this permeated the remainder of the proceedings regarding the care, custody, and control of her child. Therefore, I would find reversible error and remand this case to the juvenile court for further proceedings.